# IN THE COURT OF APPEALS OF IOWA

No. 22-0384
Filed May 11, 2022

**IN THE INTEREST OF P.K.,**
**Minor Child,**

**J.K., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Worth County, Adam D. Sauer, District Associate Judge.

The father appeals the order terminating his parental rights. **AFFIRMED.**

Cameron M. Sprecher of Sprecher Law Office, PLC, Mason City, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Gina Jorgensen, Hampton, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

P.K. is a three-year-old child.  The State petitioned to terminate the parental rights of the child's father.  The State did not seek to terminate the rights of the child's mother.  Following a hearing, the juvenile court terminated the father's rights.  He appeals.

I.      **Background**

This family first came to the attention of the Iowa Department of Human Services (DHS) in 2019 due to allegations that the father was caring for the child while under the influence of methamphetamine.  A child abuse assessment was founded after the father admitted methamphetamine use and he was determined to have abused the child's mother.  The juvenile court eventually ordered the father's removal from the family home due to failure to comply with DHS requirements.  The child was adjudicated in need of assistance.  At the beginning of DHS involvement, the child was placed with her paternal grandmother, but the child was eventually returned to her mother's custody.

During nearly two years of DHS involvement with the father, he has been offered numerous services, including substance-abuse evaluations and treatment services; family safety, risk, and permanency services; family-centered services; mental-health services; family team meetings; a parent partner; family treatment court involvement; and visitation with the child.  The father's engagement with these services has been sporadic.  Of primary concern is the father's substance abuse.  He has had a few periods of sobriety, but he has largely provided positive

drug tests, has tampered with several drug tests, and has failed to engage consistently in treatment.

The current termination-of-parental-rights proceeding is the second such proceeding against the father regarding this child. Nearly one year prior to the present proceeding, the State filed a petition seeking to terminate the rights of both parents. After a hearing, the juvenile court denied the termination petition and gave both parents an additional six months to work toward reunification. The mother utilized those six months to improve to the point that the child was returned to her care. The father did not utilize the extension to improve. The father is in largely the same, if not a worse, position as he was at the time of the prior termination hearing. In the few months before the termination hearing in the current proceeding, he completely disengaged from services and failed to contact service providers. He has struggled significantly with maintaining stability in his life. His employment history has been spotty, with periods of unemployment and bouncing from job to job. As of the termination hearing, the DHS was unable to confirm any employment for him for several months, though he testified he would begin a new job the day after the hearing. At the time of the hearing, the father was facing eviction from his apartment due to unpaid rent.

Following a hearing, the juvenile court terminated the father's parental rights. The father appeals.

## II.   Standard of Review

Our standard of review is as follows:

> In termination-of-parental-rights cases, we review the proceedings de novo. We are not bound by the juvenile court's

findings of fact, but we do give them weight, especially in assessing the credibility of witnesses. There must be clear and convincing evidence of the grounds for termination of parental rights. Evidence is considered clear and convincing when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.[1]

## III. Analysis

### A. The Three-Step Analysis

Termination of parental rights under chapter 232 follows a three-step analysis. First, the court must determine if a ground for termination under section 232.116(1) has been established. If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.[2]

If a parent does not challenge one of the steps, we do not address that step.[3]

### B. Issues Raised

The father makes three arguments on appeal: (1) the State failed to prove statutory grounds for termination; (2) he should have been given an additional six months to work toward reunification; and (3) he has a close bond with the child that should prevent termination. We address each of these issues separately.

#### 1. Statutory Grounds

The juvenile court terminated the father's parental rights to the child pursuant to Iowa Code section 232.116(1)(h) (2021). For termination under this

---

[1] *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (alteration in original) (internal citations and quotation marks omitted).
[2] *In re D.W.*, 791 N.W.2d 703, 706-07 (Iowa 2010) (internal citations omitted).
[3] *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

subparagraph, the State must prove:

> (1)  The child is three years of age or younger.
> (2)  The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3)  The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4)  There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.[4]

On appeal, the father only challenges the fourth element—that the child could not be returned to his care at the time of the hearing.[5]

The primary impediment to the father gaining custody of the child is his substance-abuse problem with methamphetamine.  At the time of the termination hearing, the father was still limited to fully supervised visits with the child due to his methamphetamine problem.[6]  Throughout the lengthy duration of his case, the father was offered numerous treatment opportunities.  His engagement with treatment has been sporadic.  At the time of the termination hearing, he had not been engaged in treatment for several months.  Although the father had some periods of short-lived sobriety, demonstrated by negative drug tests, at the time of

---

[4] Iowa Code § 232.116(1)(h)(1)–(4).

[5] *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (stating "at the present time" means at the time of the termination hearing).

[6] *See In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care."); *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("[A]n unresolved, severe, and chronic drug addiction can render a parent unfit to raise children.").

the hearing, he had an unbroken string of several months of missed and positive drug tests.[7]  He was also caught tampering with tests on several occasions.

In addition to his unresolved substance-abuse issues, the father has only been sporadically involved in most of the services offered, and he has been routinely dishonest with service providers.  After more than two years of involvement with the DHS, the father has not been able to exhibit sobriety or stability so that providers could confidently place the child in his unsupervised care.  Accordingly, we agree with the juvenile court's finding that the State proved a ground for termination.

### 2.    Additional Time

If the juvenile court decides not to terminate parental rights, it has the option of entering any of the permanency options available under Iowa Code section 232.104.[8]  One of those permanency options is to give a parent an additional six months to work toward reunification if it can enumerate reasons it believes the need for removal will no longer exist at the end of the six-month period.[9]  The father contends the juvenile court erred in denying his request for that additional time. We agree with the juvenile court.

At the time of this termination hearing, the child had been removed from the father's custody for the majority of her short life.  After receiving services for over two years, the father has exhibited little to no progress in the areas that first

---

[7] *See In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases noting missed tests are presumed positive for illegal substances).

[8] Iowa Code § 232.117(5).

[9] *See* Iowa Code § 232.104(2)(b).

necessitated the child's removal from his care. Further, the father was already granted an extension of time one year earlier when the juvenile court declined to terminate his rights. The father did not use that extension to gain his footing. At this point, we cannot conclude that the impediments to reunification that exist now will not exist six months in the future. Accordingly, we agree with the juvenile court's denial of the father's request for additional time to work toward reunification.

### 3. Permissive Exception

The father's final argument is that a permissive exception should be applied to avoid termination. Iowa Code section 232.116(3) provides a number of such exceptions. The exceptions are permissive, and the burden of proof to establish an exception is on the parent resisting termination.[10] The father asserts that the exception set forth in Iowa Code section 232.116(3)(c) should preclude termination. That section provides that a court may decline to terminate a parent's rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."[11]

The father argues that his rights should not be terminated because he has a close bond with the child and, if his rights are terminated, he will no longer have any financial obligation to the child. He asserts this would be detrimental to the child in the long run. We are not persuaded by this argument. As for the loss of support, the record establishes that the father has not been providing any support,

---

[10] *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).
[11] Iowa Code § 232.116(3)(c).

and, for the duration of the case, he has not maintained stable employment. The prospect of some speculative future support the father may provide does not justify denying termination now.

As for the bond he shares with the child, by all accounts the two are bonded. However, we agree with the juvenile court that this bond does not preclude termination. Despite the bond he shares with his child, the father has still exhibited years of ongoing substance abuse and instability. This child should not be forced to wait any longer for her father to establish stability.[12] We agree with the juvenile court's decision not to apply a permissive exception to negate termination.

## IV. Conclusion

Following our de novo review, we agree with the juvenile court that the State proved a statutory ground for termination, granting an additional six months is not warranted, and the closeness of the father's relationship with the child should not preclude termination. Accordingly, we affirm the juvenile court's termination of the father's parental rights to the child.

**AFFIRMED.**

---

[12] *See In re K.H.*, No. 03-0671, 2003 WL 21459582, at *2 (Iowa Ct. App. June 25, 2003) ("This child should not be forced to wait any longer while her parent attempts to create a stable home.").